IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MELIA G. GAY                                                                           PLAINTIFF

V.                         CASE NO. 1:16-CV-00104 JTK

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION                                                                         DEFENDANT

## ORDER

**I.   Introduction:**

Plaintiff, Melia G. Gay, applied for disability income benefits ("DIB") and supplemental security income benefits ("SSI") on January 30, 2014, alleging a disability onset date of January 1, 2007. (Tr. at 20). After conducting a hearing, the Administrative Law Judge ("ALJ") decided that based on a lack of medical evidence for Gay's DIB claim, he would consider her SSI claim only (with relevant time-period of January 30, 2014 through May 20, 2015). (Tr. at 20, 27). The ALJ denied her claim on May 20, 2015. (Tr. at 36). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Gay has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**II.  The Commissioner's Decision:**

The ALJ found that Gay had not engaged in substantial gainful activity since the alleged onset date of July 1, 2007. (Tr. at 23). The ALJ found, at Step Two of the sequential five-step analysis, that Gay had the following severe impairments: degenerative disc disease of the lumbar

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

spine; status post right shoulder arthroscopy; depression, anxiety; congestive heart failure; and hepatitis. *Id.*

At Step Three, the ALJ determined that Gay's impairments did not meet or equal a listed impairment. *Id.* Before proceeding to Step Four, the ALJ determined that Gay had the residual functional capacity ("RFC") to perform sedentary work with restrictions: 1) she would be limited to occasional postural activities of stooping, crouching, bending, kneeling, crawling, and balancing; 2) she would be limited to frequent reaching overhead with the dominant right upper extremity; 3) she would be limited to work that is simple, routine, and repetitive with supervision that is simple, direct, and concrete; and 4) she would be limited to frequent contact with co-workers and supervisors and occasional contact with the general public. (Tr. at 25). The ALJ next determined that Gay could not return to past relevant work. (Tr. at 34). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Gay's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 35). Based on that determination, the ALJ held that Gay was not disabled. (Tr. at 36).

## III. Discussion:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only

2

evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

  B. Gay's Arguments on Appeal

Gay argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ did not assign the proper RFC, arguing that her alleged pain would further restrict her ability to work. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

In making her RFC argument, Gay only raises symptoms of pain as evidence of error by the ALJ. Therefore, the Court will limit its discussion to impairments that account for Gay's pain.[2]

Gay's complaints of pain arise from lumbar degenerative disc disease and right shoulder problems, which required arthroscopic surgery. On April 6, 2013, Dr. Andrew Wilkins, M.D., found only mild tenderness in a musculoskeletal exam, and found that Gay was able to stand on

---

[2] The RFC correctly incorporated Gay's mental impairments, accounting for sporadic psychiatric treatment, positive response to therapy, and the ability to engage in a variety of daily activities. (Tr. at 31-36).

3

tiptoes and heels, tandem walk, and squat without difficulty. (Tr. at 641-643). She had full muscle strength and normal sensation and reflexes. *Id*. Range of motion for the spine and upper and lower extremity joints was normal. (Tr. at 644). Dr. Wilkins concluded that Gay could sit and perform normal workday activities assuming standard break periods. (Tr. at 643).

An August 2014 lumbar spine MRI revealed tiny extrusions at the L3-4 and L4-5 levels, but no significant spinal canal or foraminal narrowing. (Tr. at 751, 758). Neurologist Ippei Takagi, M.D., found normal tone in upper extremities and normal gait. (Tr. at 758). He diagnosed lumbar degenerative disc disease, but he found no significant neural compromise; he noted that Gay's pain arose from an acute injury, which occurred in March 2014. *Id.* Dr. Takagi recommended conservative treatment with epidural steroid injections and physical therapy. *Id*. The need for conservative treatment undermines complaints of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Gay saw Dr. David Rubin, M.D., on March 19, 2015, and Gay told him that the injections and therapy had not helped with pain. (Tr. at 871-876). However, he found normal range of motion, no tenderness on palpation, negative straight-leg raise, and normal muscle tone and gait. (Tr. at 872-874). Based on x-rays, he found degenerative disc disease that was normal for Gay's age. (Tr. at 875). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

As for Gay's shoulder condition, she exhibited tenderness and degenerative changes at the AC joint in April 2014. (Tr. at 860-861). However, she had normal strength and full range of motion in her upper right extremity, right elbow, and right hand. (Tr. at 861). Dr. John Akins, M.D., diagnosed right shoulder strain and recommended steroid injections, which helped

4

significantly with the shoulder pain. (Tr. at 860). However, on November 7, 2014, Gay told Dr. Akins that her shoulder pain persisted, so he recommended arthroscopic surgery. (Tr. at 858). On December 10, 2014, Dr. Akins performed a right shoulder arthroscopy, and one week after surgery, he found that she was doing much better and the pain was much improved. (Tr. at 854-856). Dr. Akins told her to proceed with normal activity, and she did not have any further treatment with Dr. Akins.

Gay's daily activities do not suggest disabling pain. She drives, shops in stores, attends to personal care, goes to church and doctors' appointments, and prepares simple meals. (Tr. at 24). . Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

Finally, Gay did not follow up with treatment as prescribed. After a diagnosis of Hepatitis-C, she "started treatment but never finished" that particular course of treatment. (Tr. at 676). And on three occasions, providers recommended that Gay quit smoking to improve her compromised health, yet she continued to smoke. (Tr. at 29-30, 687, 746, 804, 819). A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005); *see Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)(the ALJ correctly discounted claimant's credibility when claimant failed to stop smoking despite physician's orders).

The ALJ properly considered Gay's pain symptoms, including objective medical evidence and treatment notes, response to treatment, conservative care, and ability to undertake a variety of postural activities to determine Gay's RFC. The RFC limited workplace demands in a manner consistent with the evidence in the record as a whole.

5

**IV. Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC properly incorporated all of Gay's impairments. The finding that Gay was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

    IT IS SO ORDERED this 20th day of October, 2017.

                                                                   UNITED STATES MAGISTRATE JUDGE